AO 106 (Rev. 06/09)  Application for a Search Warrant



FILED

MAR **1 4** 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Samsung cell phone, Model SM-J327T1,IMEI:<br>359214/09/116195/4. FCC ID: A3LSMJ327T | )<br>)<br>)<br>)<br>)<br>)    Case No.    **1 9 M J 1 0 4 4** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

   See Attachment A, which is incorporated by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

   See Attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

    ☑ evidence of a crime;

    ☐ contraband, fruits of crime, or other items illegally possessed;

    ☐ property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 952/960/963 | Importation of a controlled substance and conspiracy |

The application is based on these facts:
See  Affidavit of Homeland Security Investigations Special Agent Robin Tannehill, which is hereby inorporated by reference and made part hereof.

    ☑ Continued on the attached sheet.

    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

                   _____
                         *Applicant's signature*

                 Robin Tannehill, Special Agent
                     *Printed name and title*

Sworn to before me and signed in my presence.

Date:   3/14/19

                 _____
                         *Judge's signature*

City and state:  San Diego, CA          Mitchell D. Dembin, Magistrate Judge
                                     *Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH WARRANT

I, Robin Tannehill, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.     I make this affidavit in support of an application for search warrant in for the following electronic devices:  one Samsung cellular phone, Model Number SM-J327T1, IMEI:  359214/09/116195/4, FCC ID:  A3LSMJ327T ("TARGET TELEPHONE"), described in Attachment A (incorporated herein by reference), which was seized from Jose Francisco RAYA on October 25, 2018, incident to his arrest for importation of methamphetamine and heroin at the Otay Mesa, California Port of Entry.

2.     The TARGET TELEPHONE is currently in the possession of the Department of Homeland Security, Homeland Security Investigations, Immigration and Customs Enforcement, 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized Property Vault).

3.     I seek authority to search the TARGET TELEPHONE for evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960, as described in Attachment B (incorporated herein by reference) for the time period from February 27, 2018, through October 25, 2018.

### TRAINING AND EXPERIENCE

4.     I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations and have been a federal law enforcement officer since December 2011.  I am currently assigned to a Contraband Smuggling group in San Diego, California. My duties include investigating the illicit trafficking of controlled substances into the United States. I have received specific training in narcotics investigations and the methods used by narcotics traffickers to import and distribute drugs. I have investigated numerous drug trafficking cases, using many investigative techniques. I have also worked and consulted with many law enforcement officers experienced in drug trafficking investigations.

5.     I have investigated illicit controlled substance trafficking in San Diego and

surrounding areas. I have had formal training and experience in controlled substance investigations and I am familiar with the manner in which controlled substances are manufactured, packaged, marketed, and consumed. I completed trainings on narcotic investigations that included classroom and field training in the complete investigations of narcotics, sales of narcotics, and the culture of the narcotic sales community. I have received training in the identification of all types of controlled substances by sight and odor. In the course of my employment, I have become familiar with the ordinary meaning of controlled substance slang and jargon, and I am familiar with the manners and techniques of manufacturers and traffickers in controlled substances as practiced locally.

6.      As an agent, I have participated in numerous major narcotic trafficking investigations. I have been present and participated in undercover surveillance operations, the purchase of large amounts of narcotics, vehicle stops with large seizures of narcotics recovered, and interviewed many suspects who were arrested to further enhance my training and understanding of the narcotics trafficking industry.

7.      During the course of my duties and while assisting other law enforcement personnel, I have interviewed or conversed with countless narcotic users. From these conversations and interviews, I have become familiar with the manner in which controlled substances are packaged, marketed and consumed.

8.      Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from text

AFFIDAVIT IN SUPPORT OF APPLICATION FOR          2
SEARCH WARRANT

1  messaging cell phone applications such as WhatsApp, social networking messages, and
2  videos reflecting co-conspirators or illegal activity.

3     9.     In preparing this affidavit, I have conferred with other agents and law
4  enforcement personnel who are experienced in the area of narcotics investigations, and the
5  opinions stated below are shared by them.  Further, I have personal knowledge of the
6  following facts, or have had them related to me by persons mentioned in this affidavit.

7     10.    Based upon my training and experience as a Special Agent, and consultations
8  with law enforcement officers experienced in controlled substance smuggling
9  investigations, and all the facts and opinions set forth in this affidavit, I submit the
10 following:

11        a.     Drug smugglers will use cellular telephones because they are mobile and
12    they have instant access to telephone calls, text, WhatsApp and other texting
13    applications, the internet, video, social networking sites, and voice messages;

14        b.     Drug smugglers will use WhatsApp and other encrypted texting
15    applications on cellular telephones to communicate because they believe that these
16    services insulate their communications from law enforcement;

17        c.     Drug smugglers will use cellular telephones because they are able to
18    actively monitor the progress of their illegal cargo while the conveyance is in transit.

19        d.     Drug smugglers and their accomplices will use cellular telephones because
20    they can easily arrange and/or determine what time their illegal cargo will arrive at
21    predetermined locations.

22        e.     Drug smugglers will use cellular telephones to direct drivers to
23    synchronize an exact drop off and/or pick up time of their illegal cargo.

24        f.     Drug smugglers will use cellular telephones to notify or warn their
25    accomplices of law enforcement activity including the presence and location of marked
26    and unmarked units, as well as the operational status of Border Patrol checkpoints.

27
28 AFFIDAVIT IN SUPPORT OF APPLICATION FOR        3
   SEARCH WARRANT

**1**  g.    Drug smugglers will use cellular telephones to communicate with each
**2**  other regarding payment and other financial arrangements relating to the transportation
**3**  of their illegal cargo.

**4**  11.    The facts set forth in this affidavit are based on my own personal knowledge;
**5**  knowledge obtained from other individuals during my participation in this investigation,
**6**  including other law enforcement officers; interviews; my review of documents related to
**7**  this investigation; communications with others who have personal knowledge of the events
**8**  and circumstances described herein; conversations with other agents experienced in
**9**  controlled substance investigations, and information gained through my training and
**10**  experience.  All the dates, times, and amounts listed in this affidavit are approximate.
**11**  Because this affidavit is submitted for the limited purpose of establishing probable cause
**12**  in support of the application for search warrants, it does not set forth each and every fact
**13**  that I or others have learned during the course of this investigation.

**14**  **FACTS SUPPORTING PROBABLE CAUSE**

**15**  12.    On or about October 25, 2018, at approximately 6:10 p.m., Jose RAYA
**16**  attempted to enter the United States from the Republic of Mexico through the vehicle lanes
**17**  at the Otay Mesa, California Port of Entry (POE).  RAYA was the driver, registered owner,
**18**  and sole occupant of a 2003 Ford F-150 bearing California license plate 96558J2.

**19**  13.    Anti-Terrorism and Contraband Enforcement Team (A-TCET) officer Tan
**20**  was conducting roving operations and targeted RAYA's vehicle.  He utilized a K910B on
**21**  the spare tire and it showed high readings.  A-TCET officer Tan asked Defendant where
**22**  he was going and if he had anything to declare.  RAYA stated he was going to San Diego
**23**  airport to pick up his daughter who was flying from Sacramento.  A-TCET officer Tan
**24**  asked RAYA who owned the truck and he responded that he bought the truck a year ago.
**25**  Officer Tan requested the assistance of a K9 to screen the vehicle.  Canine Enforcement
**26**  Officer Lee searched the vehicle in with the assistance of a Narcotics/Human Detection
**27**  Dog (NHDD). The NHDD alerted to a trained odor to the spare tire which was mounted

AFFIDAVIT IN SUPPORT OF APPLICATION FOR          4
**28**  SEARCH WARRANT

1 up underneath the bed of the pickup truck. The vehicle was referred to the secondary
2 inspection lot for further inspection.

3    14.    The vehicle was driven through the Z-portal X-ray machine and CBPO
4 Rodriguez noticed anomalies in the spare tire.  CBPO Bryan-Fiamengo conducted the
5 secondary inspection of the vehicle and found twenty-six (26) packages hidden inside the
6 spare tire.  CBPO Bryan-Fiamengo probed a random package and extracted a substance
7 which field tested positive for heroin.  A total of one (1) packages of heroin were
8 discovered with a total weight of 1.60 kgs (3.52 pounds).  The remaining twenty-five
9 packages contained a white crystalized substance which field-tested positive for
10 methamphetamine with a total weight of 16.80 kgs (36.96 pounds).  In addition, CBPO
11 Bryan-Fiamengo discovered non-factory compartments in the vehicle's rear seats under
12 the upholstery.

13    15.    Officers placed RAYA under arrest for violating Title 21 United States Code,
14 Sections 952 and 960, Unlawful Importation of a Controlled Substance.  At the time of his
15 arrest, RAYA was in possession of the TARGET TELEPHONE and $5,022 in currency.
16 The CBPOs seized TARGET TELEPHONE and currency from RAYA.  No prior attempts
17 to download the contents of the TARGET TELEPHONE were made.

18    16.    A two-count Information filed in the Southern District of California in case
19 number 18-CR-5105-BAS charged RAYA with importation of methamphetamine and
20 heroin in violation of Title 21, United States Code sections 952 and 960.  A continued
21 motion hearing in that case is set for March 25, 2019, in front of the Honorable Cynthia
22 Bashant.

23    17.    A copy of the California DMV registration found in the vehicle after RAYA's
24 arrest indicates that the 2003 Ford F-150 was registered to RAYA and the registration was
25 valid from February 27, 2018, through February 28, 2019.  According to RAYA's border
26 crossing history, RAYA first crossed in the 2003 Ford F-150 where methamphetamine and

27

28 AFFIDAVIT IN SUPPORT OF APPLICATION FOR          5
   SEARCH WARRANT

heroin were found on February 27, 2018.  RAYA had approximately forty (40) border crossings in the 2003 Ford F-150 prior to his arrest on October 25, 2018.

18.    Based upon my experience and investigation in this case, I believe that RAYA, as well as other persons as yet unknown, were involved in an on-going conspiracy to import methamphetamine, heroin, or some prohibited narcotics.    Based on my experience investigating narcotics smugglers, I also believe that RAYA may have used the TARGET TELEPHONE to coordinate with co-conspirators regarding the importation and delivery of the methamphetamine and heroin, and to otherwise further this conspiracy both inside and outside the United States.  I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, messages sent via texting applications such as WhatsApp, email messages, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of cellular telephones which identify other persons involved in narcotics trafficking activities.

19.    Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of RAYA, and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, text messages, messages from texting applications like WhatsApp, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of the cellular telephone described herein. Because the TARGET TELEPHONE has been in the custody of HSI since the date of RAYA's arrest, I believe that this information continues to be stored on the TARGET TELEPHONE.

20.    Drug trafficking conspiracies require intricate planning and coordination.

This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States. Co-conspirators communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States. In this case, evidence supports that probable cause exists to search the TARGET TELEPHONE for information dating back to February 27, 2018. This is based upon a review of Defendants' crossing history and DMV records.

## SEARCH METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may

1  take weeks or longer.

2      22.   Following the issuance of this warrant, I will collect the subject cellular
3  telephone and subject it to analysis.  All forensic analysis of the data contained within the
4  telephone and its memory cards will employ search protocols directed exclusively to the
5  identification and extraction of data within the scope of this warrant.

6      23.   Based on the foregoing, identifying and extracting data subject to seizure
7  pursuant to this warrant may require a range of data analysis techniques, including manual
8  review, and, consequently, may take weeks or months.  The personnel conducting the
9  identification and extraction of data will complete the analysis within ninety (90) days of
10  the date the warrant is signed, absent further application to this court.

11  **CONCLUSION**

12      24.   Based on all of the facts and circumstances described above, there is probable
13  cause to believe that RAYA used the TARGET TELEPHONE to facilitate the offense of
14  importing methamphetamine, heroin or other federally-controlled substances.  The
15  TARGET TELEPHONE was likely used to facilitate the offenses by transmitting and
16  storing data, which constitutes evidence of violations of Title 21, United States Code,
17  Sections 952 and 960.

18      25.   There is also probable cause exists to believe that evidence and
19  instrumentalities of illegal activity committed by RAYA continues to exist on the
20  TARGET TELEPHONE.

21      26.   Based upon my experience and training, consultation with other agents in
22  narcotics investigations, consultation with other sources of information, and the facts set
23  forth herein, I know that the items to be seized set forth in Attachment B (incorporated
24  herein) are likely to be found in the property to be searched described in Attachment A
25  (incorporated herein).  Therefore, I respectfully request that the Court issue a warrant
26  authorizing me, a Special Agent with Homeland Security Investigations, or another federal

27
28  AFFIDAVIT IN SUPPORT OF APPLICATION FOR    8
   SEARCH WARRANT

1    law enforcement agent specially trained in digital evidence recovery, to search the items

2    described in Attachment A, and seize the items listed in Attachment B.

3

4    ROBIN TANNEHILL
          HSI Special Agent

5

6    Subscribed and sworn to before me this <u>14</u> day of March, 2019.

7

8

9    HON. Mitchell D. Dembin
        United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    AFFIDAVIT IN SUPPORT OF APPLICATION FOR    9
      SEARCH WARRANT

**ATTACHMENT A**

## PROPERTY TO BE SEARCHED

one Samsung cellular phone, Model Number SM-J327T1

IMEI: 359214/09/116195/4

FCC ID: A3LSMJ327T

("TARGET TELEPHONE")

currently in the possession of the Department of Homeland Security, Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized Property Vault).

## ATTACHMENT B
### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 27, 2018, up to and including October 25, 2018:

a.   tending to indicate efforts to import methamphetamine, heroin, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, heroin, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, heroin, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine, heroin, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substance within the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.